UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:12-CV-746-JDM

DUSTY D. JAGGERS                                                             PLAINTIFF

V.

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY                  DEFENDANT

## MEMORANDUM OPINION

The plaintiff, Dusty D. Jaggers, filed this action pursuant to 42 U.S.C. §405(g), seeking judicial review of an administrative decision of the Commissioner of Social Security, who denied her application for supplemental security income benefits. At issue is whether the administrative law judge erred by not fully explaining his reasons for rejecting the opinions of Ms. Jaggers's treating psychiatrist when he determined that Ms. Jaggers retained the residual functional capacity to perform work at all exertional levels.

After reviewing the parties' fact and law summaries and the administrative record, the concludes that the ALJ did not err as a matter of law.

## I.

Ms. Jaggers filed an application for disability insurance benefits in March 2009 and alleged she became disabled in January 2003. After her application was denied by the state agency, she requested a hearing with an administrative law judge (an "ALJ"). Following the evidentiary hearing, at which Ms. Jaggers and a vocational expert testified, the ALJ issued an opinion in which he determined that Ms. Jaggers suffers from the severe impairments of bipolar disorder, anxiety, a learning disorder, and borderline intellectual functioning, none of which,

either singly or in combination, meet or equal the criteria of any of the mental health impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1. The ALJ further determined that Ms. Jaggers retains the residual functional capacity to perform the full range of work at all exertional levels, with some non-exertional limitations pertaining to her mental health issues.

In making this determination, the ALJ made the following observation:

> In terms of the claimant's alleged debilitating conditions, the evidence does not support that these conditions are as limiting as alleged. Her mental status examination has been only mildly abnormal. She has been treated with medication and outpatient counseling, but has never required any inpatient psychiatric care. She reports improvement with her medication. Her overall functioning has generally been rated in the moderately impaired range (Exhibits 1F, 2F, 3F, 4F, 7F, 10F, 11F & 13F). She reports a wide array of daily activities that are inconsistent with a complete inability to work. To be sure, she would have some limitations from her conditions, but these limitations have been properly accounted for in the residual functional capacity assessed herein, giving the claimant every benefit of the doubt.

He also stated that the opinions of Ms. Jaggers's treating psychiatrist, who completed a "check the box" assessment of her work-related functioning, and the opinion of the consultative examiner, were entitled to no more than little weight, because they were "inconsistent with the claimant's history of treatment and with her only mildly abnormal presentation on mental status examination."

Ms. Jaggers argues that these determinations were in error because they are not supported by the evidence in the record and because the ALJ failed to provide adequate explanation for his rejection of her treating psychiatrist's and the consultative examiner's opinions. Specifically, Ms. Jaggers asserts that the exhibits cited by the ALJ (1F-4F, 7F, 10F, 11F and 13F) not only fail to support his conclusion, but contradict them, and that the ALJ's "boilerplate" rejection of the examining and treating mental health professionals' opinions lacked adequate supporting detail.

2

## II.

Although a district court may not try a Social Security appeal *de novo*, it need not affirm the conclusions of the Commissioner of Social Security if an administrative law judge failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. 42 U.S.C. § 405(g); *see also Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008).

**A. Whether the ALJ's Conclusion that Ms. Jaggers's Impairments are Not as Debilitating as Alleged is Supported by Substantial Evidence in the Record.**

The exhibits cited by the ALJ in support of his conclusion that Ms. Jaggers's impairments are not as debilitating as she claims, include Jefferson County Public Schools records (1F), Emergency Department Records from a local hospital (2F), treatment records from the Family Health Center (3F), treatment notes from Ms. Jaggers's treating psychiatrist, Steven Lippmann (7F, 10F, 11F and 13F), and the opinion of the consultative examiner, Jessica Huett, Psy. D. (4F). Ms. Jaggers asserts that there is no "logical bridge" between the ALJ's conclusions regarding the degree of her impairment and the contents of these records. The court disagrees.

Ms. Jaggers's school records, which included specific diagnostic testing, indicate that she had the ability to stay on task and was within the average range for speaking, listening, and writing, but suffered from below average math skills.[1] As measured by the Woodcock-Johnson Severe Impairment Battery, Ms. Jaggers's adaptive behavior factors were average.[2] Her medical records from the emergency department of St. Mary & Elizabeth Hospital do not support the ALJ's conclusions, and an argument could be made that they are also irrelevant, because Ms. Jaggers only sought treatment for a reaction to one of her prescribed medicines.[3]

---

[1] Admin. R. at 215.
[2] Admin. R. at 217-218.
[3] Admin. R. at 228-232.

The treatment records from Ms. Jaggers' Family Health Center doctors do note that she had expressed thoughts of suicide and contain a recommendation during one visit that Ms. Jaggers should undergo inpatient observation, but Ms. Jaggers declined that recommendation, and other records indicate that she had improved with medication. Similarly, the treatment notes from Dr. Lippman and the University of Louisville Psychiatric Group document occasional panic attacks, but they are not anywhere near as frequent as Ms. Jaggers alleges. Moreover, Dr. Lippmann's notes also confirm that Ms. Jaggers's symptoms improve with medication, when she takes it, and consistently note that her appearance is fair to good, her behavior is appropriate, her thoughts are organized, and her speech is normal.[4] When these treatment notes are considered in conjunction with Dr. Huett's observations that are not dependent on Ms. Jaggers' subjective reports,[5] and the University of Louisville Psychiatric Group's Psychiatric Evaluation, which assessed her overall level of functioning as on the border of moderately and mildly impaired,[6] there exists substantial evidence that these records cited by the ALJ support his conclusion that Ms. Jaggers reports improvement with medication and has generally been assessed in only the moderately impaired range.

**B. The ALJ's Failure to Evaluate and Explain his Reasons for Rejecting the Opinions of the Consultative Examiners and Ms. Jaggers's Treating Psychiatrist**

The process of assigning weight to medical opinions in the record begins with a determination whether to assign controlling weight to the opinion of the claimant's treating source. 20 C.F.R. § 416.927(d). When a treating source's opinion is both well supported by medically acceptable clinical and laboratory diagnostic techniques, and not inconsistent with other substantial evidence in the record, it should receive controlling weight. *See* Social Security

---

[4] *Compare* Admin. R. at 259-268, 288-94; *and* Admin. R. at 307-309 (noting degradation of Ms. Jaggers's condition because she ran out of her prescribed medication).
[5] Admin. R. at 234-236.
[6] Admin. R. at 264-268.

4

Ruling ("SSR") 96-2p; 20 C.F.R. § 416.927(d)(2); *Cole v. Comm'r of Soc. Sec.,* 661 F.3d 931, 937 (6th Cir. 2011). If an administrative law judge determines that a treating source's opinion is not entitled to controlling weight, he must nonetheless determine how much weight the opinion is entitled to, and must set forth in the administrative decision good reasons for the weight given to that medical opinion. SSR 96-2p; 20 C.F.R. § 416.927(d)(2); *see Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 545-546 (6th Cir. 2004). Although the opinions of a consultative examiner must be considered, see 20 C.F.R. 404.916(c), the Social Security Act's requirement that ALJ's give "good reasons" for assigning a particular degree of weight to a medical opinion applies only to the opinions of treating sources, *see Smith v. Comm'r of Soc. Sec.,* 482 F.3d 873, 875 (6th Cir.2007).

Dr. Lippmann's assessment of Ms. Jaggers's functional limitations[7] was contradicted by a significant amount of other evidence in the record, which the ALJ accurately cited (*see* discussion, *supra*), which supports and explains his decision to give Dr. Lippmann's "check the box" opinion little weight.[8] The same evidence also provides substantial support for the ALJ's decision to give little weight to Dr. Huett's opinion that Ms. Jaggers's overall functioning was seriously impaired and that she had moderate to marked limitations with respect to several work-related functions.[9] It is also important to note that the ALJ did not reject entirely Dr. Lippmann's and Dr. Huett's opinions. He accepted their conclusions that Ms. Jaggers's impairments affect her ability to perform work-related functions, and placed the following limitations on her residual functional capacity: "she can perform simple, repetitive tasks with no production rate paced work but rather goal oriented work, with occasional contact with co-worker and

---

[7] Admin. R. at 301-303.
[8] *See* Admin. R. at 25-26, 301-303.
[9] Admin. R. at 25-26, 239-242.

5

supervisors, and no contact with the general public.[10]  Because the vocational expert testified that there exist sufficient jobs that would accommodate these limitations,[11] the court finds that the ALJ's conclusion that Ms. Jaggers is not entitled to supplemental security income benefits to be adequately supported by the record.

**III.**

For the foregoing reasons, the court concludes that the final decision of the Commissioner is supported by substantial evidence in the record and finds no basis for reversing the decision of the Commissioner or remanding this case for further proceedings pursuant to 42 U.S.C. § 405(g).

DATE:

cc: counsel of record